## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

AMANDA SEUTTER and BRITTANY YELLE, *individually and on behalf of a class of similarly situated individuals*,

Civil No. 24-2179 (JRT/DJF)

Plaintiffs,

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS**

v.

MEAD JOHNSON NUTRITION COMPANY and MEAD JOHNSON & COMPANY, LLC,

Defendants.

Catherine Anne Peterson and Rebecca A. Peterson, **GEORGE FELDMAN MCDONALD, PLLC**, 1650 West Eighty-Second Street, Suite 880, Bloomington, MN 55431; Krista Freier and Robert K. Shelquist, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; Catherine Sung-Yun K. Smith, Daniel E. Gustafson, and Shashi K. Gowda, **GUSTAFSON GLUEK PLLC**, 120 South Sixth Street, Suite 2600, Minneapolis, MN 55402; Jason D. Gustafson, **THRONDSET MICHENFELDER LLC**, 80 South Eighth Street, Suite 900, Minneapolis, MN 55402; Kara A. Elgersma and Kenneth A. Wexler, **WEXLER BOLEY & ELGERSMA LLP**, 311 South Wacker Drive, Suite 5450, Chicago, IL, 60606, for Plaintiffs.

Ethan W. Weber and Jennifer L. Mesko, **TUCKER ELLIS LLP**, 950 Main Avenue, Suite 1100, Cleveland, OH, 44113; George W. Soule, **SOULE & STULL LLC**, 7201 Metro Boulevard, Suite 200, Edina, MN 55439, for Defendants.

Plaintiffs Amanda Seutter and Brittany Yelle bring this action on behalf of themselves and all those similarly situated against Defendants Mead Johnson Nutrition Company and Mead Johnson & Company, LLC (collectively "Mead Johnson") for the

failure to disclose the presence of heavy metals in their Enfamil infant formula products.

Mead Johnson now moves to dismiss, asking the Court to decline to hear the case under

the primary jurisdiction doctrine, to dismiss for lack of standing, or to dismiss for failure

to state a claim.

Because many of the issues identified in the Motion to Dismiss would benefit from

discovery and argument at class certification, the Court will deny the Motion to Dismiss

in full.  The Court will first decline to apply the doctrine of primary jurisdiction and find

Plaintiffs have met other standing requirements.  As to failure to state a claim, the Court

will then find that Plaintiffs have stated a claim for fraudulent omission, have met pre-

suit notification requirements for implied breach of warranty, and are not barred from

pleading unrich enrichment in the alternative.

## BACKGROUND

### I.    FACTS

Mead Johnson is one of the largest manufacturers of infant formula in the United

States, at one time holding 39.6% of market share for powdered infant formula.  (Notice

Removal, Ex. 1 ("Compl.") ¶ 2, June 6, 2024, Docket No. 1.)  Plaintiffs allege that Mead

Johnson's Enfamil products[1] contain the "Heavy Metals" arsenic, cadmium, and lead.  (*Id.*

¶ 1, n.1.)  Mead Johnson does not warn consumers that its products may contain heavy

---

[1] Specifically, those products include Enfamil A.R., Enfamil Gentlease, Enfamil Enspire Gentlease, Enfamil NeuroPro, Enfamil NeuroPro Sensitive, Enfamil Nutramigen, and Enfamil ProSobee. (Compl. ¶ 1, n.1.)

metals and in fact affirmatively markets its products as "brain-building," "expert-recommended," and generally healthy for infants.  (*Id.* ¶¶ 7–10.)

Named Plaintiffs Amanda Seutter and Brittany Yelle (collectively "Plaintiffs") are Minnesota residents who purchased Enfamil products in Minnesota for their children.  (*Id.* ¶¶ 31–36.)  Neither Seutter nor Yelle knew that Enfamil products contained or had a risk of containing heavy metals but "would be willing to purchase [them] again if [Plaintiffs] could be certain that they do not contain (or have a material risk of containing) Heavy Metals."  (*Id.* ¶¶ 33, 37.)

## II.    PROCEDURAL HISTORY

Plaintiffs originally brought this action in state court in Minnesota.  (Notice Removal.)  Mead Johnson timely removed to federal court under diversity jurisdiction.  (*Id.*)  Named Plaintiffs bring this action, which includes eight state law causes of action, on behalf of the following Class: "All persons who are residents of Minnesota who, from May 1, 2018, to the present, purchased the Infant Formulas in Minnesota for household use, and not for resale."  (Compl. ¶ 173.)

Mead Johnson now moves to dismiss all claims.  (Mot. Dismiss, Aug. 7, 2024, Docket No. 14.)

**DISCUSSION**

## I.    STANDARD OF REVIEW

### A.    12(b)(1)

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction, including for lack of standing, and requires the Court to examine whether it has authority to decide the claims. *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013). The party seeking to invoke a federal court's subject matter jurisdiction bears the burden of showing that the Court has jurisdiction. *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011). The Court must dismiss an action if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In deciding a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (citations omitted). The Court also accepts as true all facts alleged in the Complaint, construing all reasonable inferences in the plaintiff's favor. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). In contrast, "[i]n a factual attack, the court considers matters outside the pleadings" and the non-moving party does not enjoy the benefit of the allegations in its pleadings being accepted as true. *Osborn*, 918 F.2d at 729 n.6 (citations omitted). "The general rule is that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citations and internal quotation marks omitted).

Here, Mead Johnson advances a 12(b)(1) attack that is partially facial and partially factual. To the extent Mead Johnson advances a factual attack, the Court will consider some matters outside the pleadings to resolve those issues.

**B.     12(b)(6)**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court considers all facts alleged in the Complaint as true to determine if the Complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court construes the Complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the Complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), or mere "labels and conclusions or a formulaic recitation of the elements of a cause of action," *Iqbal*, 556 U.S. at 678 (quotation omitted). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

At the motion to dismiss stage, the Court may consider the allegations in the Complaint as well as "those materials that are necessarily embraced by the

pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).  The Court may also consider matters of public record and exhibits attached to the pleadings, so long as those documents do not conflict with the Complaint.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

###### C.      9(b)

To adequately plead a claim for fraud, "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  *United States ex rel. Raynor v. Nat'l Rural Utilities Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (citation omitted).  "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story."  *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013) (citation omitted).

Because the purpose of Rule 9(b) is to give defendants an opportunity to respond quickly and accurately to damaging fraud allegations, "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citation omitted). But "Rule 9(b) does not require that the exact particulars of every instance of fraud be alleged, so long as the complaint includes enough detail to inform the defendant of the

core factual basis for the fraud claims." *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 898 (D. Minn. 2013) (citation omitted). Ultimately, "[t]he level of particularity required depends on the nature of a case." *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012).

## II. ANALYSIS

Mead Johnson moves to dismiss this action, asking the Court to (1) invoke primary jurisdiction and dismiss the Complaint in full in deference to the Food and Drug Administration, (2) dismiss for lack of Article III standing for the products that Plaintiffs did not purchase, and/or (3) dismiss for failure to state a claim.

### A. Primary Jurisdiction

The first issue is whether the Court should dismiss pursuant to the prudential standing doctrine of primary jurisdiction. Primary jurisdiction, like other prudential doctrines, is not an Article III standing issue. Rather, it is a way for courts to assert that even though they have the power to decide a case, prudence urges them to abstain from deciding the case and instead allow an administrative agency with specialized knowledge to adjudicate the claim.

The doctrine of primary jurisdiction applies to claims "properly cognizable in court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). "Under the doctrine of primary jurisdiction a court may leave an issue for agency determination when it involves the special expertise of the agency and would impact the uniformity of the regulated field." *DeBruce Grain,*

*Inc. v. Union Pac. R.R. Co.*, 149 F.3d 787, 789 (8th Cir. 1998). "No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). "Once a district court decides to refer an issue or claim to an administrative agency under the doctrine of primary jurisdiction, it may either dismiss or stay the action." *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 913 (8th Cir. 2015).

Here, Mead Johnson urges the Court to exercise its discretion not to adjudicate this claim and instead allow the Food and Drug Administration ("FDA") to regulate heavy metals in food intended for babies and young children through its "Closer to Zero" initiative. *See Closer to Zero: Reducing Childhood Exposure to Contaminants from Foods*, U.S. Food & Drug Admin., https://www.fda.gov/food/environmental-contaminants-food/closer-zero-reducing-childhood-exposure-contaminants-foods (last accessed Jan. 16, 2025). Because the Closer to Zero program was intended for "foods commonly eaten by babies and young children," its applicability to infant formula was unclear during briefing and oral argument for this order. Now that the FDA has issued final guidance on lead (but not other heavy metals like arsenic, cadmium, and mercury), it has now become clear infant formula is not included in the scope of the initiative.[2]

_____

[2] *See Action Levels for Lead in Processed Food Intended for Babies and Young Children: Guidance for Industry*, U.S. Dep't Health & Human Servs.,

Accordingly, the Court will not abdicate its duty to decide the law in deference to the FDA and declines to apply the primary jurisdiction doctrine here.

### B.    Article III Standing

Mead Johnson argues that Plaintiffs lack standing to bring claims for products that they did not buy.

In their Complaint, Plaintiffs include seven Enfamil variations—Enfamil A.R., Enfamil Gentlease, Enfamil Enspire Gentlease, Enfamil NeuroPro, Enfamil NeuroPro Sensitive, Enfamil Nutramigen, and Enfamil ProSobee—but the Named Plaintiffs only allege they bought two: Enfamil Gentlease and Enfamil NeuroPro.  Mead Johnson argues that Plaintiffs' claims should be narrowed to those two varieties.

To satisfy Article III standing requirements, a plaintiff must show (1) that she suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by judicial relief.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Because companies often market slightly different variations of the same product to consumers, courts have found that plaintiffs in a consumer class action have standing to sue for injuries from products they did not buy so long as the products are "substantially similar."  *Gisairo v. Lenovo (U.S.) Inc.*, 516 F. Supp. 3d 880, 887–88 (D. Minn.

--------

https://www.fda.gov/media/164684/download (last accessed Jan. 16, 2025) ("This guidance does not apply to infant formula or any beverages, including toddler drinks.").

2021) (citing *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 891 (N.D. Cal. 2012)). To hold otherwise would mean that a class action against, say, a shampoo manufacturer might need a named plaintiff for every single variety of shampoo the company markets to proceed to trial—even if the company markets dozens of such varieties and even if each of those varieties are substantively the same for all material purposes. That cannot be what the law requires.

But the timing of when to make that "substantially similar" inquiry is an open question. Indeed, courts have split on whether and in what circumstances Article III standing issues may be postponed until after class certification when class certification is "logically antecedent" to standing. *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-02042, 2012 WL 2917365, at *5 (E.D. Mich. July 17, 2012) (citation omitted) (recognizing split among federal courts). At least one court in this District has concluded that the question of whether plaintiffs can assert claims concerning products they did not purchase is better resolved at class certification. *Barclay v. ICON Health & Fitness, Inc.*, No. 19-2970, 2020 WL 6083704, at *6 (D. Minn. Oct. 15, 2020) (concluding that the issue of whether plaintiffs may "assert any claims concerning treadmill models that they did not purchase" is not an issue of standing at all but instead "is better resolved at class certification"); *but see Chin v. Gen. Mills, Inc.*, No. 12-2150, 2013 WL 2420455, at *3–4 (D. Minn. June 3, 2013) (holding that plaintiff who purchased one product lacked standing to challenge alleged misrepresentations pertaining to another related product that plaintiff

had not purchased). Indeed, the issue of whether class certification should be reached before standing is a "difficult chicken-and-egg question." *Perez v. Nidek Co.*, 711 F.3d 1109, 1113–14 (9th Cir. 2013).

Here, Plaintiffs allege the Enfamil varieties at issue in this case are substantially similar in all relevant respects: they are all powdered infant formulas, contain similar ingredients, bear packaging that makes similar claims about health benefits, and lack disclosures that they contain or risk containing heavy metals. Mead Johnson contests those characterizations. But that is precisely why this issue is ripe for discovery.

The Court will therefore join the "growing consensus among district courts that class certification is 'logically antecedent,' where its outcome will affect the Article III standing determination" because ultimately "the weight of authority holds that in general class certification should come first." *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 574 (S.D.N.Y. 2012) (citations omitted). At class certification, the Court can use the commonality and typicality prongs of a Rule 23 analysis to determine which Enfamil product varieties should be included in the Class's claims.

Therefore, the Court, for now, will deny the Motion to Dismiss for specific product variations not bought by the Named Plaintiffs.

### C.    Injunctive Relief

Mead Johnson next argues that Plaintiffs are not entitled to injunctive relief, the only relief available under the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA"), because they do not adequately allege irreparable injury or future harm.

-11-

To survive a motion to dismiss on a MUDTPA claim, a plaintiff "must allege an irreparable injury or threat of future harm." *Gisairo*, 516 F. Supp. 3d at 890. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). But in consumer cases that began with a past purchase, "special circumstances that imply an ongoing relationship between the consumer and the defendant" make the threat of future harm more credible. *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 933 (D. Minn. 2024).

Courts have sometimes found no future harm when the consumer protection suit centers on a one-time purchase. *See, e.g.*, *Barclay*, 2020 WL 6083704, at *5 (finding no threat of future harm over a past purchase of a treadmill); *Gisairo*, 516 F. Supp. 3d at 891 (same for a purchase of a laptop).

But as any new parent knows, infant formula is not a one-time purchase. Where, as here, plaintiffs are purchasing a product which necessarily requires multiple, regular purchases over a period of time, the threat of future harm is far more plausible. Because Plaintiffs have adequately alleged that they wish to continue purchasing infant formula but are wary of doing so absent clearer information about its heavy metal contents, the Court finds Plaintiffs have adequately alleged a threat of future harm and have standing to pursue injunctive relief.

-12-

Accordingly, the Court will deny the Motion to Dismiss the claims for injunctive relief.

**D.    Fraudulent Omission**

Mead Johnson next argues that Plaintiffs' statutory and common law causes of action fail because they do not sufficiently allege duty of care and materiality.  For omission-based fraud claims under Minnesota law, "a plaintiff must prove an omission of material fact, as well as special circumstances that trigger a duty to disclose." *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 951 (D. Minn. 2020), *aff'd*, 9 F.4th 981 (8th Cir. 2021).

**1.    Duty to Disclose**

Mead Johnson first argues that it has no duty to disclose that its products allegedly contain or might contain heavy metals.

To prevail on a fraudulent omission claim in Minnesota, a plaintiff must show that the defendant had a duty to disclose the omitted information.  *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695–96 (Minn. 2014). At common law, "one party to a transaction has no duty to disclose material facts to the other party."  *Id.* at 695.  But at least three special circumstances could trigger a duty to disclose:

> First, a person who has a confidential or fiduciary relationship with the other party to the transaction must disclose material facts.  Second, one who has special knowledge of material facts to which the other party does not have access may have a duty to disclose those facts to the other party.  Third, a

person who speaks must say enough to prevent the words
communicated from misleading the other party.

*Id.* (citations omitted).  Still, these examples "are not intended to be exclusive."  *Id.*
Rather, "an omission-based consumer fraud claim is actionable . . . when special
circumstances exist that trigger a legal or equitable duty to disclose the omitted facts."
*Id.*

Plaintiffs proceed primarily on the special-knowledge exception, arguing that
Mead Johnson knew its products contained heavy metals, that Plaintiffs did not have
access to that information, and that therefore Mead Johnson owed a duty to disclose that
information to Plaintiffs.

Courts have sometimes characterized this special-knowledge exception as a
narrow one.  *Song v. Champion Petfoods USA, Inc.*, No. 18-3205, 2020 WL 7624861, at *11
(D. Minn. Dec. 22, 2020), *aff'd*, 27 F.4th 1339 (8th Cir. 2022) ("Minnesota courts almost
never find that one party's 'special knowledge' triggers a duty to disclose.").  However
true that may have been at one point, courts have since routinely used Minnesota's
special-knowledge exception to find a duty to disclose, especially at the motion-to-dismiss
stage.  *See, e.g.*, *Varela v. State Farm Mut. Auto. Ins. Co.*, 655 F. Supp. 3d 813, 824 (D.
Minn. 2023) (finding plaintiffs had plausibly alleged that insurer had actual knowledge of
fraudulent activities under special-knowledge exception); *Cleveland v. Whirlpool Corp.*,
550 F. Supp. 3d 660, 675 (D. Minn. 2021) (finding a plausible special-knowledge exception
because "Whirlpool possessed knowledge of the Dishwashers' defective nature prior to

-14-

bringing the product to market"); *Podpeskar v. Makita U.S.A. Inc.*, 247 F. Supp. 3d 1001, 1011 (D. Minn. 2017) (finding plaintiff "alleged that [Defendant] knew of the batteries' defects and that a buyer could not reasonably learn of the defect until after purchase"); *Sadeghi-A v. Daimler Trucks N. Am. LLC*, No. 19-2373, 2021 WL 856919, at *15 (D. Minn. Mar. 8, 2021) ("Sadeghi-A has adequately alleged a duty to disclose based on Defendants' special knowledge of material facts about the USB tag axle defects to which Sadeghi-A did not have access.").

Here, Plaintiffs properly allege that Mead Johnson had special knowledge of the heavy metal content. (*See* Compl. ¶¶ 18, 44–81 ("Despite the known health risks, Defendant knowingly chose to not disclose to consumers that the Infant Formulas contain . . . Heavy Metals.").) Plaintiffs also allege that they—and consumers generally—lacked access to this information. (*See, e.g.*, *id.* ¶¶ 6, 22.) These allegations are enough at this stage of the litigation, and the Court finds that a duty to disclose has been plausibly alleged.

### 2.    Materiality of Omissions

Mead Johnson next argues that even if it owed a duty to disclose the presence or risk of heavy metals in their products, such a disclosure would not be material to the transaction.

For an omission-based claim to be actionable, it must be material to the transaction. *Graphic Commc'ns*, 850 N.W.2d at 695. Something is material if it is "[o]f such a nature that knowledge of the item would affect a person's decision-making."

*Taqueria El Primo LLC v. Illinois Farmers Ins. Co.*, 691 F. Supp. 3d 940, 965 (D. Minn. 2023), *vacated on other grounds*, 109 F.4th 1095 (8th Cir. 2024) (quoting *Material*, Black's Law Dictionary (11th ed. 2019)).  Materiality is typically a question of fact for the jury.  *See STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn. 2002).  But materiality becomes a question of law "when reasonable minds can reach only one conclusion."  *Id.* (citation omitted).

Here, Plaintiffs claim that the growing consumer concern about the presence of heavy metals in food has prompted a Congressional report, an FDA regulatory push, and a litany of inquiries by journalists.  (*See* Compl. ¶ 78.)  At the very least, reasonable minds might reach the conclusion that consumers would want to be alerted to the presence of heavy metals in infant formula.  Barring other facts that might emerge during discovery, this issue is one for the jury.

Overall, the Court finds Plaintiffs have stated a claim on their consumer fraud claims and will accordingly deny the Motion to Dismiss as to those claims.

### E.    Pre-Suit Notice Requirements

Mead Johnson argues that the Court must dismiss the Implied Breach of Warranty claim for lack of pre-suit notice.

An implied warranty of merchantability requires that goods be "fit for the ordinary purposes for which such goods are used."  Minn. Stat. § 336.2-314(2)(c).  However, to bring a claim for breach of warranty, a buyer must first, within a reasonable time after discovering the breach, "notify the seller of breach or be barred from any remedy."  Minn.

Stat. § 336.2-607(3)(a).  "Notice provides the seller the opportunity to: (1) correct any defect; (2) prepare for negotiation and litigation; and (3) investigate the claims independently while the products remain in a relatively pristine state."  *Hammerschmidt v. Gen. Motors LLC*, 583 F. Supp. 3d 1215, 1224 (D. Minn. 2022) (internal quotation marks omitted).  "The bar for sufficiency is low," *Drobnak v. Andersen Corp.*, 561 F.3d 778, 784 (8th Cir. 2009), and the timing requirement for "a retail consumer is to be judged by different standards" because "the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy," Minn. Stat. § 336.2-607(3)(a), U.C.C. cmt. 4.

Plaintiffs argue that Mead Johnson was already on notice of Plaintiffs' implied breach of warranty claims several months before the suit was filed, at least because Plaintiff Seutter herself had already filed a similar breach of warranty claim in the Northern District of Illinois before voluntarily dismissing those claims.  (*See* Decl. Catherine K. Smith, Ex. 4, Aug. 28, 2024, Docket No. 22.)  At least one court has found that prior litigation alone is not enough to satisfy the pre-suit notice requirement. *Hammerschmidt*, 583 F. Supp. 3d at 1124–25.  But in *Hammerschmidt*, the court found prior litigation insufficient because "[t]he fact that different plaintiffs filed a separate lawsuit does not satisfy the requirement that Plaintiffs, as the buyers, notify GM of the alleged breach of warranty."  *Id.* at 1124.

Here, at least one of the plaintiffs (Seutter) was actually the same plaintiff as the one in the prior lawsuit, distinguishing *Hammerschmidt* from this case.  Plaintiffs also represent in their briefing that they informed Mead Johnson that they planned to refile in the relevant state courts.  With the added thrust of the caselaw's lax standard for consumers to give pre-suit notice, the Court is satisfied that the breach of warranty's pre-suit notice requirement has been met here.

The Court will thus deny the Motion to Dismiss the implied breach of warranty claim.

### F.    Unjust Enrichment

Finally, Mead Johnson argues that Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs already have an adequate remedy at law.

To state a claim for unjust enrichment under Minnesota law, a plaintiff must allege facts showing "(1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it."  *Christensen L. Off., PLLC v. Ngouambe*, No. A17-1917, 2018 WL 2293423, at *6 (Minn. Ct. App. May 21, 2018).

However, unjust enrichment is not available when there was an alternative adequate remedy at law.  *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996).  Still, that does not necessarily preclude plaintiffs from pleading equitable relief and other claims in the alternative.  *See* Fed. R. Civ. P. 8(d)(2)–(3); *see also*

*United States v. R.J. Zavoral & Sons, Inc.*, 894 F. Supp. 2d 1118, 1127 (D. Minn. 2012) (concluding that plaintiff "may maintain this [unjust-enrichment] claim as [an] alternative claim for relief under Rule 8 of the Federal Rules of Civil Procedure"); *Cummins L. Off., P.A. v. Norman Graphic Printing Co.*, 826 F. Supp. 2d 1127, 1130 (D. Minn. 2011) (observing that courts "routinely permit the assertion of contract and quasi-contract claims together" and declining to dismiss plaintiff's unjust-enrichment claim on that basis).

Courts typically dismiss an unjust enrichment claim if the dispute is already governed by a contract between the parties. In *Gisairo*, the court dismissed the unjust-enrichment claim because there was a contractual remedy available—but that was only because the parties had an express Limited Warranty contract on which relief could be granted. 516 F. Supp. 3d at 893–94; *see also Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014) (affirming district court's conclusion that plaintiffs "were not entitled to plead unjust enrichment in the alternative because the parties' relationships were governed by various contracts"); *Cleveland*, 550 F. Supp. 3d at 672 (dismissing unjust-enrichment claim because express warranty provided an adequate legal remedy).

Courts will also dismiss an unjust enrichment claim when the plaintiff previously tried and failed to pursue a statutory remedy. *See Drobnak*, 561 F.3d at 787 (affirming dismissal because plaintiffs originally sought statutory and common law relief but failed

to adhere to notice and heightened-pleading requirements); *ServiceMaster of St. Cloud*, 544 N.W.2d at 306 (barring equitable recovery for failure to follow statutory or constitutional requirements to perfect a mechanic's lien).

In this case, there is no express contractual remedy, nor did Plaintiffs previously try and fail to pursue a statutory remedy.  Here, Plaintiffs are pleading their statutory claims and unjust enrichment claims in parallel.  Courts in this District have explicitly denied Mead Johnson's assertion that such claims cannot be pled in parallel.  *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 828 (D. Minn. 2010) ("The Court will permit simultaneous pleading of the breach of warranty and unjust enrichment claims on the grounds that, under Federal Rule of Civil Procedure 8(d), a party is permitted to plead in the alternative.").

Accordingly, the Court will allow the unjust enrichment claim to proceed in the alternative and will deny the Motion to Dismiss that claim.

## CONCLUSION

Some issues raised in Defendants' Motion to Dismiss are better suited for argument at class certification once the parties have had an opportunity to engage in some discovery.  So, for now, the Court will deny the Motion to Dismiss in full.  The Court declines to apply the doctrine of primary jurisdiction.  It also finds sufficient standing for slight variations of Enfamil not bought by Plaintiffs and for injunctive relief.  Finally, the Court finds that Plaintiffs have stated a claim for fraudulent omission, have met pre-suit

notification requirements for implied breach of warranty, and may plead unrich enrichment in the alternative.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 14] is **DENIED**.

DATED:  January 16, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge